UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

AMWAY ASIA PACIFIC, LTD., et al.,

                    Plaintiffs,                          Case No. 1:07-CV-1277

v.                                              Honorable Richard Alan Enslen

THOSE CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON WHO
SUBSCRIBED TO DIRECTORS,
OFFICERS AND COMPANY LIABILITY
INSURANCE POLICY NO. 509/QB319199,
et al.,

                    Defendants.
_____/

## OPINION

       Plaintiffs Amway Asia Pacific, Ltd. ("Amway Asia"), New AAP Limited ("New AAP"),

Amway Corporation ("Amway") and Alticor, Inc. ("Alticor") filed the instant diversity action against

Those Certain Undrwriters at Lloyd's, London Who Subscribed to Directors, Officers and Company

Liability Insurance Policy No. 509/QB319199 ("Primary Policy Underwriters" or "Primary

Defendants") and Those Certain Underwriters at Lloyd's, London Who Subscribed to Excess

Directors and Officers and Company Reimbursement Policy No. 757/FD970847 ("Second Excess

Underwriters" or "Second Excess Defendants"), seeking declaratory judgment under the two policies

of insurance.  The matter presently is before the Court on two motions: (1) a motion to dismiss filed

by the Primary Policy Underwriters; and (2) a motion to dismiss filed by the Second Excess

Underwriters.  For the reasons that follow, both motions are granted.

**I.**

Plaintiffs Amway Asia and New AAP are Bermuda corporations and subsidiaries of Amway, and both have their principal places of business in China.  Amway is a Michigan corporation with its principal place of business in Ada, Michigan.  Alticor is a Michigan corporation with its principal place of business in Ada, Michigan.  At all times relevant to the Complaint, Alticor was the parent company of Amway Asia, New AAP and Amway.

Lloyd's is a property and casualty insurance syndicate with its principal place of business in London, England.  Lloyd's issued Directors, Officers and Company Liability Policy No. 509/QB319199 ("Primary Policy") with a $10 million limit for the policy period from March 1, 1999 to March 1, 2000.  The Primary Policy listed Amway Asia and its subsidiaries as the named insureds. Lloyd's issued an Excess Directors and Officers and Company Reimbursement Policy No. 757/FD970847 ("Second Excess Policy") with a $60 million limit for the policy period of March 1, 1997 to March 1, 2000.  The Second Excess Policy listed Amway Asia and Amway as the named insureds.  Both policies promised to reimburse the named insureds for their costs, charges and expenses incurred in the defense of claims against Plaintiffs where there was a determination of no liability against Plaintiffs or where there was a dismissal of a claim against Plaintiffs. Reimbursement was to be made within 90 days of the date of dismissal.

Amway Asia and New AAP and its directors and officers were named as defendants in four actions stemming from a tender offer and Amalgamation Agreement in which public shareholders of Amway Asia common stock sold or tendered their shares of New AAP.  Each of the underlying actions has been dismissed on dispositive motion.  Lloyd's has declined to reimburse Plaintiffs for

their defense costs.  Plaintiffs seek a declaration of rights and duties under the policies and an order requiring Lloyd's to reimburse Plaintiffs for their defense costs.

**II.**

The Primary Policy Underwriters move to dismiss the action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, Rule 12(b)(4) for insufficient process, Rule 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim.  The Second Excess Underwriters move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and, in the alternative, under Rule 12(b)(7) for failure to join all necessary parties.

    A.     <u>Primary Policy Underwriters</u>

In their first argument for dismissal, the Primary Policy Underwriters contend that, by virtue of an endorsement to the Primary Policy, the policy was amended effective March 1, 1999. According to the Primary Defendants, the endorsement replaced the "Service of Suit Clause Nominee" in the original policy (Keith Hanson of the Chicago law firm of Hanson and Peters) with an "Overseas Jurisdiction Clause Nominee" (the Hong Kong law firm of Barlow, Lyde & Gilbert). The Primary Policy Underwriters therefore argue that the summons and complaint were required to be served on Barlow, Lyde and Gilbert, not Keith Hanson.  As a result, they contend, service of process on Keith Hanson was inadequate, and they move to dismiss under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).

Motions under Federal Rules 12(b)(4) and 12(b)(5) challenge departures from the proper procedures for serving the summons and complaint.  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004).  An objection under Rule

12(b)(4) concerns noncompliance with the form of process set forth in Federal Rule of Civil Procedure 4(f). Rule 12(b)(5) is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint. *See Procter & Gamble Cellulose Co. v. Viskoza-Loznica*, 33 F. Supp. 2d 644, 664 & n.23 (W.D. Tenn. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (2d ed. 1990)). When the validity of service is called into question by the affidavits or other evidence of the parties, the factual question ordinarily should be resolved under Rule 12(d). *Id.* However, when the factual issues regarding service are intertwined with the merits of the case, they may have to wait until trial for their resolution. *Id.*

The Primary Policy Underwriters do not allege a defect in the form of process set forth in Rule 4(f). As a consequence, their motion is not properly considered under Rule 12(b)(4). *Id.*

Under Rule 12(b)(5), the Primary Defendants challenge the lack of delivery of the Summons and Complaint on the proper service agent. As exhibits to their Motion under Rule 12(b)(5) and to their Reply Brief, the Primary Policy Underwriters have attached two declarations made by David Shears, a claims director with QBE European Operations, the managing agency responsible for underwriting and claims decisions on behalf of Syndicate 79 at Lloyd's, London, one of the syndicates that subscribed to the Primary Policy. (First Shears Decl., Dkt. No. 9-3; Second Shears Decl., Dkt. No. 12-2.) Shears avers that Exhibit B to his first declaration is a copy of an endorsement that was prepared by Amway Asia's broker, Marsh, and agreed to by the lead Primary Policy Underwriters. (First Shears Decl. at ¶¶6-7, Dkt. No. 9-3.) The Primary Defendants argue that, upon signing by the lead underwriters, the slip endorsement became effective.

In response, Plaintiffs argue that the endorsement never became part of the policy, noting that, in contrast with a different endorsement dated March 8, 2000 and attached as Exhibit A to Shears' declaration, the purported endorsement attached as Exhibit B includes no official seals or identifying numbers and is, by all appearances, incomplete.  Moreover, in response to Defendants' Motion and attachments, Plaintiffs have introduced the declaration of Richard Ratcliffe, Senior Vice President of Marsh Ltd. in the Financial Products Claim Broking area of Marsh's London office, who declares that the purported amendment was not issued or processed by the Lloyd's Policy Signing Office and was not in the policy file.  Ratcliffe further avers that, after reviewing the London file, he informed Shears that the endorsement had not been issued or processed.  (Ratcliffe Decl., ¶¶ 5-6, Dkt. No. 11-3.)  Similarly, James J. Hopson, a Claims Manager for the Midwest Zone of Marsh USA, Inc. and record custodian for the documents maintained by Marsh in and for its Detroit and Grand Rapids offices, declares that no endorsement was added to the policies contained in Marsh's records which changed the service of suit agent or added an Overseas Jurisdiction Clause.  (Hopson Aff., ¶¶ 9-12, Dkt. No. 11-4.)

In the face of these competing facts, the Primary Policy Underwriters have attached a second declaration by Shears, in which he again avers that Marsh, acting as agent for Plaintiffs, sought the policy change, a contention that Plaintiffs have not disputed.  The Primary Defendants argue that, once signed by the lead underwriters, the "slip" endorsement was binding.  In support of their argument, they cite one English decision, together with three United States District Court cases.  *See Burrows & Orrs v. Jamica Power Co. Ltd. & Anor.*, [2002] C.L.C. 255, 2001 WL 1171961 (QBD (Comm Ct)), [2002] C.L.C. 255, [2002] Lloyd's Rep. I.R. 466, [2002] 1 All E.R. (Comm) 374; *Houston Cas. Co. v. Certain Underwriters at Lloyd's, London*, 51 F. Supp. 2d 789 (S.D. Tex. 1999);

*Stony Brook Marine Trans. Corp. v. Wilton*, 1996 WL 913180, at *4 (E.D.N.Y. 1997); *Arnold v. Sphere Drake Ins.*, 1992 WL 348352 (E.D. La. 1992).

Each of the decisions cited by the Primary Defendants supports its position and Plaintiffs have not attempted to distinguish the cases. In *Burrows*, the court held that an insurance contract came into existence at the moment slips issued by Marsh Global Broking (endorsing a policy to include a reference to an overseas jurisdiction clause) were signed by the lead underwriters, notwithstanding the fact that no policy wording was formally drawn up. *Id.*, [2002] C.L.C. at 260-61. The *Burrows* court held that the reference in the slip to a particular jurisdiction clause was sufficient to bind the insured. *Id.* Similarly, in *Houston Casualty*, 51 F. Supp. 2d at 796, the court concluded that an underwriter is bound by scratching a slip and that the insured was bound by the representations of the broker as contained in the slip. *See*, *id.* at 800. *See also Stony Brook Marine*, 1996 WL 913180, at **4-5 (arbitration clause incorporated by reference in an order slip is binding once signed by insurer).

The courts uniformly recognize that "[t]he general rule is that . . . an insurance broker acts for the insured in making the application and procuring the policy . . . ." *Houston Cas.*, 51 F. Supp. 2d at 800 (internal quotations omitted); *Mark Andy, Inc. v. Hartford Fire Ins. Co.*, 229 F.3d 710, 717 (8th Cir. 2000) (presumption is that broker is agent for the insured); *Secura Ins. Co. v. Saunders*, 227 F.3d 1077, 1080 (8th Cir. 2000); 3 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE (COUCH), § 45:3 (3d ed. 2005). An insured seeking to estop an insurer from denying coverage based on a broker's actions has the burden of proving that the broker was the agent of the insurer. *See Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 514 (M.D. Pa. 1998); 3 COUCH § 45:10.

Here, the Primary Defendants supplied two clear affidavits from Shears indicating that the slip endorsement to change the service agent and to substitute the Overseas Jurisdiction Clause was prepared by Plaintiffs' broker, Marsh.  Plaintiffs have not contested Shears' averment that Marsh sought the endorsement on Plaintiffs' behalf or that it lacked authority to do so.  Plaintiffs also have not contested that the lead underwriters signed the slip.  Plaintiffs have introduced no evidence that Marsh was acting for the Primary Defendants in seeking the endorsement.  Further, Plaintiffs have cited no case law in opposition to that presented by the Primary Defendants.  Instead, Plaintiffs merely argue and provide evidence that the slip endorsement was never formally issued or placed into their policy files.

Under the uncontested law, the slip was binding when signed by the lead underwriters.  That slip identified Barlow, Lyde and Gilbert of Hong Kong as the service agent under the policy. Accordingly, the Primary Defendants are entitled to dismissal under Rule 12(b)(5).  In light of the Court's disposition of this issue, it need not and does not address the Primary Defendants' remaining arguments concerning personal jurisdiction and standing.

      B.     <u>Second Excess Underwriters</u>

The Second Excess Underwriters move to dismiss on the grounds that Plaintiffs' allegations fail to state a claim against them.  Specifically, the Second Excess Defendants contend that their liability for any losses sustained by Plaintiffs is triggered only when covered losses exceed $40 million: $20 from the primary policy and $20 from the first excess policy.  They argue that, because Plaintiffs have failed to allege that their damages exceed $40 million, they have failed to state a claim for relief.

- 7 -

Under Rule 12(b)(6), a complaint may be dismissed if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   The standard requires that a "complaint must contain either direct or inferential allegations repecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001).   While a complaint challenged under Rule 12(b)(6) need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). A complaint must contain sufficient facts to demonstrate "a plausible entitlement to relief . . . ." *Id.* at 1967.   The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).   The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex re. Bledsoe v. Community Health Sys., Inc.*, 502 F.3d 493, 502 (6th Cir. 2007)).

Plaintiffs did not file a responsive brief to Second Excess Defendants' Motion to Dismiss. Moreover, in their supplemental brief on standing, Plaintiffs acknowledge that the defense costs they seek to recover are limited to $2.2 million.  (Pls.' Mem. of Law Regarding Standing at 8, 13, Dkt. No. 15.)  Because Plaintiffs do not allege damages greater than $40 million and further admit that damages are limited to $2.2 million, the Second Excess Underwriters are entitled to dismissal.

- 8 -

### III.  CONCLUSION

For all the foregoing reasons, the Motion to Dismiss of Those Certain Underwriters Who Subscribed to Directors, Officers and Company Liability Insurance Policy No. 509/QB319199 (Dkt. No. 9) and the Motion to Dismiss of Defendant Second Excess Underwriters (Dkt. No. 10) are granted.   Plaintiffs' Complaint against the Primary Policy Underwriters is dismissed without prejudice.   Plaintiffs' Complaint against the Second Excess Underwriters is dismissed with prejudice.  A Judgment consistent with this Opinion shall issue.


        /s/ Richard Alan Enslen

DATED in Kalamazoo, MI:       RICHARD ALAN ENSLEN
    October 27, 2008       SENIOR UNITED STATES DISTRICT JUDGE